ISAAC HALL AND OTHERS, APPELLANTS, v. ELLEN HALL AND OTHERS, RESPONDENTS.

*Devise to alien — filing of deposition, under chapter 115 of 1845 — effect of.*

An action for partition may be brought, under the act of 1853, relating to disputed wills, when the property sought to be partitioned was devised, in the will of the testator, to a devisee who was incompetent to take by devise because of alienage.

A testator devised certain real estate to his sister and her husband, for their joint lives and the life of the survivor, with remainder to the children of the sister. All these children were aliens at the time of the testator's death, and had not filed the deposition required by the laws of this State, to enable them to hold such real estate, but one of them filed the deposition as required by the act of 1845 (chap. 115), and all were naturalized prior to the death of their mother.

*Held,* that upon the death of the testator, this sister and her husband took an estate for life in the property.

That the devisees of the estate in remainder, being incompetent to take, such estate vested in the citizen heirs of the testator, subject to be defeated by the filing by the devisees of the deposition provided for in section 1 of chapter 115 of 1845.

That, upon the filing of such deposition by the said devisees, the estate of the heirs would divest, and the same would vest in the devisees named in the will.

Section 11 of the said act excepts from its operation only those interests which had become vested prior to its passage.

That the omission of two of the devisees to file the deposition was cured by chapter 38 of the Laws of 1875, conferring upon heirs and devisees, being of the blood of the devisor, whether citizens or aliens, capacity to take and hold the real estate owned and held by the devisor at the time of his decease — except as against the State only; the act of 1875 being retroactive in its operation.

The practice of directing a *pro-forma* verdict at Circuit, and reserving the cause for further argument and consideration to be had· on a motion made on the judge's minutes to set aside the verdict, and on the hearing of such motion directing judgment in favor of the party entitled thereto approved.

APPEAL from an order made at the Special Term, setting aside the verdict of a jury, and directing the dismissal of the complaint herein.

The action was brought under the act of 1853, in relation to disputed wills, the plaintiffs claiming the partition of lands devised to ʼand in possession of the above named respondents. The pleadings presented, in form, various issues of fact. The case was tried at the Circuit. At the close of the evidence, the court directed the jury to find a verdict for the plaintiffs, and ordered the ·cause to be reserved for further argument and consideration, on a motion on the judge's minutes to set aside the verdict. Such motion was heard accordingly, and the court ordered the verdict to be set aside, and also ordered judgment to be entered for the defendants, with costs. Judgment having been entered accordingly, the plaintiffs appealed.

William Hall, at the time of his death, on the 26th day of July, 1861, was seized in fee and possessed of the premises described in the complaint, together with other lands. His will, dated the 19th day of March, 1859, and duly executed, was admitted to probate on the 23d day of September, 1861. The following is an extract from his will: "I give, devise and bequeath unto the children of my said sister Sarissa all that portion of the farm owned and occupied by me in Newtown, Queens county, subject, however, to a life estate therein, which life estate I do hereby devise and bequeath to my said sister Sarissa, and to her said husband, Thomas Spalding, for and during their lives and the life of the survivor."

The testator died siezed of the premises in question on the 26th day of July, 1861, leaving no wife and children, and leaving as his only heirs at law and next of kin, his brother, Isaac Hall, his sister, Sarissa Spalding, and the children of Thomas Hall, a deceased brother. The children of Thomas Hall, at the time of the death of

the testator, were the plaintiffs Isaac Hall and Susannah A. Schenck, the defendants Ellen Hall, Thomas Hall and —— Daniel Hall, who died after the death of the testator, leaving no widow or children.

Sarissa Spalding died December 19, 1874. Her children, at the testator's death, were Jeremiah B., Susannah E., Ann Sarissa and Thomas Isaac. These children of Sarissa Spalding were residents of the State of New York at the time of the death of William Hall and have resided in the State ever since 1857, except that Thomas Isaac died after the testator's death, leaving no widow or children.

Isaac Hall, a brother of the testator, died·in 1864, after the death of the testator, leaving a widow, but no children.

At the death of the testator, July 26, 1861, the plaintiffs and the defendants Ellen Hall and Thomas Hall, children of Thomas Hall, the brother of the testator, were competent to hold real estate. Isaac Hall, the brother of the testator, was naturalized October 23, 1840. Ann Hall, wife of said Isaac, filed her deposition May 30, 1856, and was naturalized October 21, 1861.

All of the above mentioned persons were competent to hold real estate when the testator died, having either filed the deposition required by the laws of this State, in the office of the Secretary of State, or having been naturalized before the testator died.

Thomas Spalding, and Sarissa, his wife, to whom the testator gave a life estate in the premises in question, were competent to hold real estate at the testator's death.

The defendants Jeremiah B. Spalding, Susannah E. Spalding, and Ann Sarissa Lewin were not competent to take and hold real estate at the death of the testator.

Jeremiah never filed any deposition, and was not naturalized until March 3, 1870. Susannah did not file any deposition until after the testator's death, to wit, October 23, 1861, and was naturalized December 19, 1863. Ann Sarissa was naturalized November 25, 1862, and she filed no deposition before the testator's death, nor at any time afterwards. Thomas Isaac died after the testator's death, and never filed any deposition, nor became naturalized. The plaintiffs Isaac Hall and Susannah A. Schenck, and the defendants Ellen Hall and Thomas Hall, children of Thomas Hall, were heirs of their brother, Daniel Hall, who died after the testator's death, leaving no widow or children.

*Sidney S. Harris,* for the appellants.

*T. James Glover,* for the respondents.

GILBERT, J.:

The practice adopted by the judge at Circuit of directing the jury *pro forma* to find a general verdict for the plaintiff, then reserving the case for further consideration, and afterwards directing a general verdict for the party entitled to it, is a very useful one when only questions of law are involved, and it was expressly sanctioned by the Code of Procedure. (§ 264.) It was also conformable to the practice before the legislature had interposed its power to regulate it by codification. It was approved by this court at General Term, and by the Court of Appeals in the case of *Maria L. Strong* v. *The City of Brooklyn* (not reported). The Code of Civil Procedure (§ 1189) contains a provision similar to section 264 of the former Code, but some confusion on this subject has been introduced by sections 1185 and 1234 of the Code of Civil Procedure. As the judgment in this case was entered before the latter Code went into operation, it is not necessary to determine the legal effect of those sections.

If a devise to a devisee, who is incompetent to take, be void, then this action is within the words of the act relative to disputed wills. (4 Edm. Stat., 504, § 2.) That such a devise is void, that is of no force or effect, and not voidable only, is clear. The objection of the defendants on this point, therefore, was properly overruled.

Nor can we assent to the proposition that Susannah E. Spalding would take all the estate devised to her and her co-tenants in case of the incompetency of the latter to take. It is not necessary to dwell on that proposition, because we think that the devisees have established a valid title as tenants in common of the estate in controversy.

The testator is the common ancestor. By his will he devised the lands in controversy to his sister Sarissa Spalding and her husband Thomas Spalding for and during their lives and the life of the survivor with remainder to the children of his said sister, their heirs and assigns forever. The testator died July 26, 1861.

It is conceded that the parents of these children were competent to hold real estate at the time of the testator's death, having before that time made and filed the deposition prescribed by section 15, article 2, title 1, chapter 1, part 2 of the Revised Statutes. (1 R. S., 720.) Their children, however, did not file any deposition nor become citizens until after the testator's death. The plaintiff contends that by reason of their failure to file depositions in conformity with the statute last cited (1 R. S., 720, § 15) *before the death of the testator*, the devise to them was void. A devise to a person, who at the time of the death of the testator was an alien not authorized to hold real estate, is declared by statute to be void. (2 R. S., 57, § 4.) It will be noticed that this statute impliedly declares that there may be aliens who are authorized, as well as aliens who are not authorized to hold real estate. The devisees in remainder in this case are collateral heirs of the testator, but being aliens, the common law incapacitated them from taking by descent, while it enabled them to take by devise or purchase, subject to forfeiture to the State upon an inquest of office found. (*Wadsworth* v. *Wadsworth*, 2 Ker., 376; *Goodrich* v. *Russell*, 42 N. Y., 177.) The disability to take by devise or purchase was created by statute. (1 R. S., 719, § 8; id., 720, § 17.) Section 8 enumerates the persons capable of taking and holding real estate, and does not include an alien devisee. Section 17 incapacitates an alien from taking or holding any real estate which may have been devised to him before he became a resident, and made the deposition prescribed by 1 Revised Statutes, 720, section 15, before referred to. The question is, whether such disability has been removed in the case before us.

It is claimed on behalf of the devisees, Spalding and Lewin, that such disability has been removed by the provisions of the act of 1845 (chap. 115) to enable resident aliens to hold and convey real estate, etc. (4 Edm. St., 300.) The first section of that act provides that any alien resident of this State to whom any real estate has been or thereafter may be devised, before making the deposition mentioned may, on filing such deposition, hold the real estate devised to such alien in the same manner, and with the like effect as if such alien at the time of such devise were a citizen. These devisees are within that description of persons. There can be no doubt that this enactment protects and confirms the devise to Susannah E. Spalding, unless to give it that

effect would divest a vested estate in the citizen heirs of the testator. We think it had no such effect, but that its effect was to lessen the estate which but for the statute and devise would have descended to the citizen heirs, and to declare that the estate which actually descended to the latter, should be defeasible upon the filing of the depositions aforesaid. The statute cannot be defeated, but on the contrary, must be carried into effect, if any legal means can be devised for that purpose. We find no difficulty in performing that duty. For it is necessary only to hold that the estate which descended to the citizen heirs was subject to the operation of the statute ; that the full effect of the devise was postponed until said devisees should file their depositions, and that in the meantime the estate was vested in the citizen heirs, subject to be divested by the filing of the depositions. That the legislature has power to make such a change in the rules of descent, we think admits of no question. (Cooley Const. Lim., 359, *et seq.*) It is equally clear, that the object of the act of 1845 was to remove the disabilities resting upon alien devisees, at the time of its passage, in case they filed the deposition referred to. It is worthy of mention that the fourth section of this act, also, in terms, enables alien heirs to take by descent from a resident alien, with the same effect as if such resident alien were a citizen. Strictly construed, this provision would not embrace a descent cast from a citizen. (See *Larreau* v. *Davignon*, 5 Abb. [N. S.], 367.) It is not necessary to decide whether such a construction would be compatible with the intent of the legislature manifested in the act; otherwise, we should be strongly inclined to hold that their intention in enacting the fourth section was to remove from resident aliens all disability to hold real estate by inheritance from a resident alien ancestor, who had acquired the same by purchase, and to confer upon them capacity to take and hold the same in case they should take the preliminary proceedings for becoming citizens. That object is in furtherance of enlightened public policy, and affords complete ground for a liberal interpretation of the statute. But whether such construction be correct or not, the capacity to take by descent, which this section confers upon resident aliens, authorizes them to hold real estate devised to them within the meaning of the statute of wills. (2 R. S., 57, § 4.) The statute certainly does not invalidate a devise to

one who is capable of taking and holding real estate, either by pur-
chase, devise or descent from any person. It does not require a
general capacity to take and hold by all modes of vesting estates, or
a special capacity to take and hold by devise. It is enough· if the
devisee is capable of holding by either mode of devolving seizin of
real estate. The case of *Heney* v. *The Brooklyn Benevolent Society*
(39 N. Y., 333) is not in conflict with, but is rather confirmatory
of, the foregoing views. That case arose under section 1 of the act
of 1843 (4 Edm. Stat., 299), and there was no devise or grant in
the case, but only a descent cast before the naturalization of the
heirs. Section 1 of the act of 1843 only enabled heirs of the intes-
tate who had become naturalized *before his death*, to inherit his estate ;
whereas the first section of the act of 1845, in terms, confers capacity
to take upon alien devisees who have filed the deposition after, as
well as those who had filed it before the passage of the latter act.
Nor does the saving clause in the eleventh section of the act of 1845
qualify the operation of the provisions thereof to which we have
referred, for the reason that that section excepts from the operation
of the act only interests which had become vested before its pas-
sage ; whereas the death of the testator did not occur until sixteen
years after its passage.

The result is that, as respects Susannah E. Spalding, the devise
is good by virtue of the original act of 1845, she having filed her
deposition conformably to section 15 of the Revised Statutes, before
cited, on the 23d of October, 1861. Jeremiah B. Spalding and
Ann Sarissa Lewin have never filed the deposition required by that
statute, but we think such omissions have been cured by statutes
amending chapter 115 of the Laws of 1845. (Laws of 1874, chap.
261 ; Laws of 1875, chap. 38.) The latter act was passed March 3,
1875. This suit was not commenced until on or after July twenty-
first, following. The act of 1875 confers upon heirs and devisees,
being of the blood of the devisor, whether citizens or aliens, capacity
to take and hold the real estate owned and held by the devisor at the
time of his decease, whether such devisor was an alien or a citizen,
except as against the State only. The saving clause contained in
section 2 of the act of 1874 does not embrace the plaintiffs, because
they claim ·by descent, and not by " devise, grant, gift or purchase."

The act of 1875, we think, was plainly intended to operate retro-

actively, and its effect was to render the title of all the devisees, under the devise in controversy, perfectly valid as against the plaintiffs, before the commencement of this action. In short, the estate of the heirs was defeasible on the devisees acquiring capacity to take the estate by filing the deposition. Then the acts of 1874 and 1875 dispensed with the formal act of filing a deposition, and conferred the requisite capacity to take without that formality.

The judgment and order appealed from must be affirmed, with costs.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment and order denying new trial affirmed, with costs.